UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RAYVON SCOTT, YAZMINE WALTON,**
**JOHN WARLICK,** and **SHERROD HUTCHIN,**
individually and on behalf of all others
similarly situated,

                                 Case No.

        Plaintiffs,

vs.                             Hon.

**FLEET QUEST LOGISTICS, LLC**
**FLEET QUEST, L.L.C., SN TRANSPORTATION**
**LLC, NERMIN MUJANOVIC, SALIH MUJANOVIC,**
**SANEL FAZLIC,** and **ARMIN HIRKICH,**
Jointly and severally,

        Defendants.
_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorney for Plaintiff*
_____/

## CLASS ACTION COMPLAINT FOR DAMAGES
## AND FOR DECLARATORY AND INJUCTIVE RELIEF
## DEMAND FOR TRIAL BY JURY

There is no other civil action pending in
this Honorable Court or any other Court
arising out of the same transaction and
occurrence.

**NOW COMES** Plaintiffs, **RAYVON SCOTT, YAZMINE WALTON, JOHN WARLICK,** and **SHERROD HUTCHIN,** individually ("Plaintiffs") and on behalf of all others situated (collectively "Class Members" or "Class"), for their Complaint against Fleet Quest Logistics, LLC, Fleet Quest L.L.C., SN Transportation LLC, Nermin Mujanovic, Salih Mujanovic, Sanel Fazlic, and Armin Hirkich, state as follows:

## INTRODUCTION

1.    This is a class action against Defendants pursuant to which Plaintiffs, as class representatives on behalf of themselves and all other similarly situated, all of whom truck drivers operating under the authority of Defendants, challenge the lawfulness of Defendants' compensation practices as applied to the Class Members. Plaintiffs maintain that Defendants' absence of a written lease agreement and misrepresentations regarding compensation violate the Federal commercial transportation laws and regulations as set forth under the United States Code and the Code of Federal Regulations as follows:

a.    Defendants have induced Plaintiffs and Class Members to drive directly and/or haul loads for Defendants under the promise of being compensated at the rate of fifty percent (50%) of the gross income for each load only to pay Plaintiffs and Class Members significantly less. Plaintiffs and Class Members are compensated as owner-operators/contractors despite never entering any lease agreement with Defendants to lease equipment. Similarly there is no agreement outlining the terms of compensation and other required language;

b.    Defendants make several "charge-backs" from the Compensation of Plaintiffs and Class Members without clearly specifying all items that may be initially paid for by the authorized carrier, but deducted from their compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed.

c.    Defendants have refused to provide Plaintiffs and Class Members documentation relating to their compensation and the unauthorized deductions from their compensation in violation of Department of Transportation regulations. On information and belief, Defendants have fraudulently represented these amounts in order to defraud Plaintiffs and Class Members of earned compensation.

2.    Plaintiffs seek declaratory relief; monetary damages resulting from Defendants' unlawful practices; attorneys' fees and costs incurred by the Plaintiffs and Class Members in this action; and such other relief as may be deemed appropriate by the Court. Plaintiffs also request an order enjoining and restraining Defendants from transferring, diverting, or otherwise concealing or destroying records relating in any way to the gross compensation for loads hauled for or on behalf of Defendants, the compensation paid to Plaintiffs and Class Members, any charge-back costs deducted from Plaintiffs or any other potential Class Members compensation.

## JURISDICITON AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), because the claims asserted herein arise under the laws of the United

States, specifically, this action arises in part under 49 U.S.C. § 14704 and (2), and 49 C.F.R. Part 376 *et seq.*

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1337 (proceedings arising under an act of Congress regulating commerce). The cause of action alleged here arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transportation of property in interstate commerce because the claims asserted herein arise under the laws of the United States.

5.    This Court has supplemental jurisdiction over all other state law claims made in this action pursuant to 28 U.S.C. § 1367(a), because such claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 49 U.S.C. 14704(d)(1), because the Defendants reside and operate out of this judicial district.

## **PARTIES**

7.    Plaintiff **Rayvon Scott** is an interstate truck driver and resident of the State of Louisiana.  Mr. Scott was hired to drive loads directly for Defendants, however, was treated as an own owner-operator who allegedly leased a motor vehicle through Defendants and to haul loads for Defendants.  Notably, Defendants never provided Mr. Scott with a lease for equipment and/or operating agreement to haul loads.

8.      Plaintiff **Yazmine Walton** is an interstate truck driver and resident of the State of Texas.  Ms. Walton was hired to drive loads directly for Defendants, however, was treated as an own owner-operator who allegedly leased a motor vehicle through Defendants and to haul loads for Defendants. Notably, Defendants never provided Ms. Walton with a lease for equipment and/or operating agreement to haul loads.

9.      Plaintiff **John Warlick** is an interstate truck driver and resident of the State of Tennessee. Mr. Warlick was hired to drive loads directly for Defendants, however, is/was treated as an own owner-operator who allegedly leased a motor vehicle through Defendants and to haul loads for Defendants.  Notably, Defendants never provided Mr. Warlick with a lease for equipment and/or operating agreement to haul loads.

10.     Plaintiff **Sherrod Hutchin** is an interstate truck driver and resident of the State of Georgia. Mr. Hutchin was hired to drive loads directly for Defendants, however, was treated as an own owner-operator who allegedly leased a motor vehicle through Defendants and to haul loads for Defendants.  Notably, Defendants never provided Mr. Hutchin with a lease for equipment and/or operating agreement to haul loads.

11.     Defendant Fleet Quest Logistics, LLC is a domestic limited liability company who is under the laws of Michigan and based out of Grand Rapids, MI. Fleet Quest Logistics LLC is a federally regulated motor carrier engaged in providing transportation services to the shipping public and is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).  Fleet Quest Logistics LLC employs or contracts

with drivers to transport its customers' freight in interstate commerce. As part of its business, Fleet Quest Logistics LLC leases equipment from other related entities or owner-operators. Fleet Quests Logistics, LLC is registered under MC-631434, US DOT # 1722624. According to the SAFER – FMCSA management information systems, Fleet Quest Logistics, LLC reported that it operated 50 power units (semi-trucks) and 51 drivers. Further, it reported ran approximately 5,500,000 miles in 2021.

12.    Defendant Fleet Quest L.L.C. is a domestic limited liability company who is under the laws of Michigan and based out of Grand Rapids, MI. On information and belief, Fleet Quest L.L.C. is a federally regulated motor carrier engaged in providing transportation services to the shipping public and is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).   On information and belief, Fleet Quest, L.L.C. employs or contracts with drivers to transport its customers' freight in interstate commerce. As part of its business, On information and belief, Fleet Quest, L.L.C. leases equipment from other related entities or owner-operators.   Fleet Quests, L.L.C. is registered under MC-522255, US DOT # 1363184. According to the SAFER – FMCSA management information systems, Fleet Quest, L.L.C. reported that it operated 8 power units (semi-trucks) and 6 drivers. Further, it reported running approximately 2,125,000 miles in 2021. Notably, Fleet Quest L.L.C. performs work out of the same location as Defendant Fleet Quest Logistics LLC and, on information and belief, both company names are used interchangeably.

6

13.     Defendant SN Transportation LLC is a domestic limited liability company who is under the laws of Michigan and based out of Grand Rapids, MI. On information and belief, SN Transportation LLC performs work out of the same location as the Fleet Quest Defendants.

14.     Defendant Nermin Mujanovic is an individual, agent, and owner of Defendant SN Transportation LLC. Upon information and belief, Mr. Mujanovic resides within the Western District of Michigan.

15.     Defendant SALIH MUJANOVIC is an individual, who on information and belief is an employee and/or agent for all Defendants. Defendant Salih Mujanovic is the "dispatcher" for Defendant SN Transportation, however, oversees service calls and is the point of communication between Plaintiffs and Class Members and Fleet Quest. Salih Mujanovic is the son of Defendant Nermin Mujaovic. Upon information and belief, Mr. Mujanovic resides within the Western District of Michigan.

16.     Defendant Sanel Fazlic is an individual, agent, and co-owner of the Fleet Quest Defendants. Upon information and belief, Mr. Falic resides within the Western District of Michigan.

17.     Defendant Armin Hirkich is an individual, agent, and co-owner of the Fleet Quest Defendants. Upon information and belief, Mr. Hickich resides within the Western District of Michigan.

18.    Defendants Fleet Quest Logistics, LLC, Fleet Quest L.L.C., (collectively "Fleet Quest"), and SN Transportation, LLC ("SN Transportation") on information and belief, are the same business, have common control, perform the same duties, share employees and resources, and are owned by Defendant Nermin Muganovic, either directly or through shell businesses or family members .

19.    On information and belief, SN Transportation exists for the purpose of defrauding Plaintiffs and Class members out of earned wages and chargebacks.

20.    At all relevant times, Fleet Quest aided and abetted SN Transportation

21.    In addition, Fleet Quest and SN Transportation are each liable for the acts and omissions of the other for the following reasons:

    a.    They are agents of each other;

    b.    They are joint venturers;

    c.    They are alter egos of each other;

    d.    They are engaged in a civil conspiracy; and/or

    e.    They engaged in a concert of action.

## GENERAL ALLEGATIONS

22.    Plaintiffs and other drivers worked for Defendant as owner-operators for purposes of the TILA regulations. 49 C.F.R. § 376.2. They transported goods for Defendant Fleet Quest while driving trucks they *allegedly* leased from Defendant's affiliate leasing company, SN Transportation.

23.    Each Plaintiff and Class Member (collectively "Class Member") has a near identical story. Each applied for employment driving for Fleet Quest.  Each was told they would be compensated fifty percent (50%) of the gross amount they hauled, as opposed to an hourly rate or per mile rate. It was each Class Member's understanding and belief they were driving directly for Fleet Quest.

24.    Further, on information and belief, the trucks driven by Plaintiffs and other Class Members contained the name and logo of Fleet Quest.

25.    Contrary to this arrangement, each Class Member was instead compensated as an "owner-operator" hauling loads for Fleet Quest, but seemingly "leasing" the truck and being compensated by another company, SN Transportation. Under this fraudulent arrangement, Defendants subtracted various unauthorized "charge backs" from Plaintiffs and Class Members pay *prior* to calculating the 50% split. In other cases, Defendants only paid some Plaintiffs and Class Members forty-five percent (45%), after unauthorized chargebacks, without any notice of explanation.

26.    No Plaintiff or Class Member ever sought employment or to lease a vehicle directly from SN Transportation. Likewise, no Plaintiff or Class Member understood that they were being hired as "owner-operators" as opposed to company drivers.

27.    Notably, several Plaintiffs and Class Members, including Sherrod Hutchin, have never even heard of SN Transportation despite allegedly leasing a vehicle from them.

9

28.    Unlike company drivers or direct employees, owner-operators engage in the transportation of commodities, and acting as independent contractors, they lease or otherwise provide their equipment and services to motor carriers who possess the requisite legal operating authority under the Department of Transportation ("DOT") regulations to enter into contracts with shippers for the transport of property.

29.    Defendants Fleet Quest Logistics, LLC and Fleet Quest, L.L.C. are regulated motor carriers, primarily engaged in the enterprise of providing transportation services to the shipping public under authority granted by the DOT.

30.    The Truth in Leasing Act ("TILA") and its implementing regulations govern the terms and conditions under which owner-operator truckers lease equipment to federally authorized motor carriers that transport freight in interstate commerce. *See* 49 U.S.C. § 14102(a); 49 C.F.R. § 376.12.

31.    Under the TILA regulations, an authorized carrier may perform authorized transportation in leased equipment *only* if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

32.    Under the regulations, the required lease provisions must be "adhered to and performed by the authorized carrier." 49 C.F.R. § 376.12 (introductory paragraph).

33.    Central to this lawsuit, the TILA also requires that leases disclose all "chargebacks," or deductions from compensation. 49 C.F.R. § 376.12(h).

34.     TILA regulations require the motor carrier's equipment lease to disclose, in writing, the amount that the motor carrier will pay the owner-operator as compensation. 49 C.F.R. § 376.12(d). The regulations also require that those leases disclose the details of any escrow withholdings and charge back items. 49 C.F.R. § 376.12(h), (k).

35.     When the lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the carrier will provide the lessor a copy of the rated freight bill, or any other documentation used for a shipment containing the same information. 49 C.F.R. § 376.12(g).

36.     Despite the unambiguous requirements contained within the TILA regulations, the Defendants have not provided or entered a Lease Agreement with any Class Member.

37.     Instead, Defendants merely promised each driver, as well as advertised, that they would pay Class Members 50% of the gross of each load.

38.     Plaintiffs and Class Members accepted positions with Defendants on the conditions and in reliance of the promise that they would be compensated in the amount of 50% of the gross of each load.

39.     Rather than compensate Class Members for the promised compensation, Defendants compensate Class Members at a rate of approximately 10-25% of the total gross amount.

40.     As part of each pay settlement, Defendants deduct substantial unauthorized "charge backs" and the alleged cost of leasing the vehicle (for which Class Members never entered a written lease to do in the first place).

41.     Although Plaintiffs and Class Members applied and were hired by Fleet Quest, they receive their compensation directly from SN Transportation.

42.     Defendants have refused to provide Plaintiffs and Class Members with copies of any Lease Agreements, contracts, original brokers' load confirmation sheets, or any specificity regarding their pay or the unapproved chargebacks.

**<u>Defendants have classified and treated Plaintiffs and the Class as Owner-Operators but have not reduced any of the required Lease Agreement terms to writing and have misrepresented compensation and other terms of employment</u>**

43.     Defendants are "authorized carriers" within the meaning of 49 C.F.R. § 376.2(a).

44.     Plaintiffs and Class Members are "lessors" within the meaning of 49 C.F.R. § 376.2(f).

45.     The relationship between independent owner operators and regulated motor carriers is set forth in an agreement between the parties which is regulated by the DOT under 49 U.S.C. § 14102 *et seq.* and 49 C.F.R. § 376 *et seq.*

46.     Lease Agreements are regulated by 49 C.F.R. § 376 *et seq.*

47.     Plaintiffs and the other members of the Class have been treated as owner-operators by Defendants despite there being no "Lease Agreements" with any Defendant entity.

48.     DOT regulations expressly mandate the compensation owed by explicitly specified within the Lease Agreement.  Specifically, 49 C.F.R. § 376.12 provides:

> *(d) Compensation to be specified.* The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier. An authorized representative of the lessor may accept these documents. The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount.

49.     Here, Defendants compensated Class Members at a rate significantly lower than the agreed fifty percent (50%) gross.  Defendants have failed to reduce any compensation rate to writing for the Plaintiffs and the other members of the Class.

## Defendants Made Illegal Deduction from Plaintiffs and the Class Members' Compensation

50.     DOT regulations expressly mandate the disclosure in lease agreement of all items that may be initially paid for by the authorized carrier and "charged-back" to a lessor.  Specifically, 49 C.F.R. § 376.12 provides:

13

(h)    *Charge-back items.* The lease shall **clearly specify all items** that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.  49 C.F.R. § 376.12(h)(**Emphasis added)**

51.    DOT regulations also expressly mandate the disclosure in lease agreements that Plaintiffs and Class Members are not required to lease any equipment or purchase service or products from the authorized carrier. Specifically, 49 C.F.R. § 376.12 provides:

(i)    *Products, equipment, or services from authorized carrier-* The lease shall specify that the lessor is not required to purchase or rent products, equipment, **or** services from the authorized carrier as a condition of entering into the lease agreement…49 C.F.R. § 376.12(i)

52.    Additionally, DOT regulations also expressly mandate the lease specify who is required to maintain insurance on the vehicle. 49 C.F.R. § 376.12(j).

53.    Here, Defendants have not reduced any "chargebacks" to writing. Indeed, Defendants have never sought preapproval from any chargebacks taken from the Class Members.

54.    Likewise, Defendants have never obtained permission or an agreement from the Class Members to even lease any equipment.

55.    Similarly, Defendants have never provided Class Members notice that they were required to pay for the insurance of the vehicle.

56.     Plaintiffs and Class Members have explicitly requested Defendants provide a copy of any alleged Lease Agreement, to which Defendants either ignored the question or denied its existence.

57.     Defendants have deducted *thousands* from each Plaintiffs and Class Members as part of each settlement amounting to a payment drastically less than the promised 50% of each load hauled.  Indeed, the majority of the income of Class Members is unlawfully captured and/or converted by Defendants in the form of unapproved, unnoticed, chargebacks.

58.     Furthermore, Plaintiffs and Class Members have had chargebacks deducted even during periods of vacation, i.e. they are charged for unapproved costs during periods in which they are not even driving for Defendants.

59.     There is no Lease Agreement that provides any required specificity to Plaintiffs and other Class Members that they may be liable to such costly charge-back items as required by 49 C.F.R. § 376.12(h).

60.     Furthermore, Plaintiffs and Class Members have been refused access and ability to review the records relating to the gross compensation and unauthorized chargebacks in violation of DOT regulations.

61.     Notably, several Class Members, including some Plaintiffs, have been terminated shortly after asking too many questions regarding compensation. Others were terminated after being told they allegedly did not generate enough money when

taking a few days off to rest.  Notably, these individuals, including Plaintiff Sherrod

Hutchin, were notified of termination by Defendant Armin Hirkich, the owner of Fleet

Quest.

62.    Some Plaintiffs and/or Class Members  were compelled to terminate their

employment/contractual relationship with Defendants because of the unfair and

oppressive conditions imposed upon them.

63.    Under 49 U.S.C. §14704(a)(2), Defendant is liable to Plaintiffs and the

Class for the damages that they suffered on account of Defendant's regulatory and

contractual violations.

<u>**Class Allegations**</u>

64.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this

action on behalf of themselves and the following classes of similarly situated

individuals or entities, defined as:

> All truck drivers treated as owner-operators by Defendants or otherwise
> transported goods for Defendants at any time within 4 years prior to the date this
> action was filed or any time after this action was filed.

65.    The Class defined above satisfies the requirements of Rules 23(a) and

23(g).

66.    **Numerosity**. The Class are so numerous that joinder of all members is

impracticable, and the disposition of their claims in a class action will provide

substantial benefits to both the parties and the Court. On information and belief,

Defendants have collectively contracted with between 80 and 100 drivers, each treated as an owner-operator despite the no required paperwork.

67. **Commonality**:  Common questions of law and fact predominate over individual issues affecting only individual class members. Questions of law and fact common to the Class include, among others, the following:

i.  Whether Defendants compensated Class Members at a rate lower than the contractually agreed fifty percent (50%) without specifying as required by TILA regulations or in breach of contract with the Class Members;

ii. Whether Defendants deducted unauthorized chargebacks without specifying or obtain authorization within a written lease as required by TILA regulations;

iii. Whether Defendants charged owner-operator drivers for insurance without specifying within a written lease as required by TILA regulations;

iv. Whether Defendants unlawfully deducted the full price of fuel from drivers' settlements and retained the negotiated fuel discount;

v. Whether Defendant(s) fraudulently represented to the Plaintiff drivers that the gross receipts for a given load were lower than the amount actually collected by one or more Defendants;

vi. Whether Defendants breached the terms of a contract with Class Members by paying them less than the promised percentage of gross receipts on each load.

vii. Whether Defendants intentionally deceived or conspired to deceive Class Members by lying to them about their employment relationship, gross receipts for loads they hauled and on which their compensation was based, and the terms of employment;

viii. Whether Defendants made deductions from Plaintiffs and Class Members' wages without their written authorization at the time of the deduction;

ix. Whether Defendants are jointly liable for all claims as alter egos.

68.    **Typicality**:   Plaintiffs' claims are typical of the claims of the Class Members as a whole and all Class members were injured through Defendants' uniform misconduct. The claims of Plaintiffs and the Class arise from the same operative facts and are based upon the same legal theories. There are no defenses unique to the Plaintiffs.

69.    **Adequacy:** The Plaintiffs are capable of fairly and adequately protecting the interests of the Class because (i) Plaintiffs have retained competent and experienced counsel that have the time, experience, and resources to litigate this case; (ii) Plaintiffs are members of the Classes, their claims are typical of the Classes, and they have suffered substantially similar injuries to those suffered by the rest of the Classes; (iii) Plaintiffs' interest in obtaining monetary relief for their Classes is consistent with and not antagonistic to the interests of the Classes

70.    **Class Action Superior**:    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Questions regarding the application of TILA and DOT Regulations to Plaintiff and Class Members' compensation predominate over any questions affecting only

individual members of the class.  The damages suffered by Plaintiffs and Class

Members, while collectively substantial, are relatively small per Class member

compared to the burden and expense required to individually litigate their claims.

Individualized litigation creates a potential for inconsistent or contradictory judgments

and increases the delay and expense to all parties and the court system. By contrast, the

class action device presents far fewer management difficulties, and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision by a

single court. Accordingly, class action is superior to other available methods for the

fair and efficient adjudication of this controversy.

71.    **Other Factors**.      In Addition:

a.    the prosecution of separate actions by individual members of the class would substantially impair or impede the individual members' ability to protect their interests, in part because individual class members do not have the ability to promptly bring and prosecute these claims. Further, the majority, if not all, of the Class Members reside outside of the State of Michigan;

b.    there is no litigation already commenced by Class Members concerning this controversy that will protect the interests of the Class Members as a whole;

c.    the class action will be efficient because it will concentrate  the litigation of numerous substantially identical claims in one forum;

d.    a class action is fair and efficient because no substantial difficulties are likely to be encountered in the management of the class action; and

e.      if separate actions were brought, it could lead to inconsistent rulings on the applicability and interpretation of the statutes at issue.

72.    The proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(3). Predominance. Common questions predominate over any individual questions because the important and prevalent issues in this case concern Defendants' conduct and its effects, which are common to the Classes. Individual issues are minor and may be nothing more than damage calculations pursuant to a formula.

Both liability and damages can be determined in one class-wide proceeding.

**COUNT I**
**VIOLATION OF 49 C.F.R. § 376.12 *et seq.***
*(By all Plaintiffs against all Defendants on behalf of the Class)*

73.    All preceding paragraphs are incorporated by reference.

74.    Defendants have compensated Plaintiffs and Class Members as owner-operating and agreed to pay them a percentage of the gross revenue of loads they hauled under Defendants' carrier license.

75.    Under the TILA regulations, an authorized carrier may perform authorized transportation in leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

76.    Under the regulations, the TILA requires that leases disclose all "chargebacks" or deductions from an owner-operator's compensation, 49 C.F.R. § 376.12(h), and that carriers provide copies of the rated freight bill to owner-operators

who are paid a percentage of the price of the load at or before the time of settlement. ***Id.*** § 376.12(g).

77.    49 C.F.R. § 376.12 requires that leases *clearly specify* all items which may be initially paid by the carrier, but ultimately deducted from the lessor's compensation or settlement.  Further, the regulations require that the lessor shall be afforded copies of documents which are necessary to determine the validity of the charge.

78.    Defendants refused to provide Plaintiffs and Class Members with copies of the rated freight bill or any form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill at or before the time of settlement. 49 C.F.R. § 376.12(g). The failure to disclose the rated freight bill prevented Plaintiffs and Class Members from contesting the underpayment.

79.    Defendant did not adhere to the terms of any agreement with Plaintiffs and Class Members because it paid them less than the percentage of the load rate it promised without specifying a lower rate within any lease agreement.

80.    Defendants violated the TILA by deducting money from Plaintiffs and Class Members' pay for various chargebacks which were not authorized pursuant to an applicable Lease Agreement.

81.    Under 49 U.S.C. §14704(a)(2), Defendants are liable to Plaintiffs and the Class Members for the damages that they suffered on account of Defendant's regulatory violations.

82.     Defendants are each liable for the acts and omissions of the others and by virtue of their relationship, as their actions, as alleged herein, served to aid and abet violations of  49 C.F.R. § 376.12.

83.     Defendants' actions as aiders and abettors to each other violated and continues to violate  49 C.F.R. § 390.13, which provides that "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

84.     As a direct and proximate result of Defendants' acts and omissions, individual Plaintiffs and all class members have suffered substantial damages and have been, and will continue to be, irreparably harmed.

## COUNT II
## BREACH OF CONTRACT
*(By all Plaintiffs against all Defendants on behalf of the Class)*

85.     All preceding paragraphs are incorporated by reference.

86.     Defendants entered into a fixed contract with Plaintiffs and the Class agreeing to pay them a fixed percentage, fifty percent (50%), of the gross revenue of the loads they hauled for Defendants.

87.     On information and belief, Defendant entered into a substantially similar Agreement with all the Class members.

88.     Plaintiffs and the Class members substantially performed all their obligations under their contracts with the Defendants.

89.    Defendants breached their contracts with Plaintiffs and the Class members by not paying them the correct percentage of the real rate that brokers or shippers paid to Defendants.

## COUNT III
## FRAUD
*(By all Plaintiffs against all Defendants on behalf of the Class)*

90.    All preceding paragraphs are incorporated by reference.

91.    Defendants have made numerous false statements to Plaintiff and the Class concerning the payments of wages and their employment relationship.

92.    On information and belief, Defendants statements regarding the gross payment of loads and the costs for which have been deducted cannot reasonably be trusted.

93.    On information and belief, Defendant entered into a substantially similar Agreement with all the Class members.

94.    Plaintiffs and the Class members substantially performed all their obligations under their contracts with the Defendants.

95.    Defendants breached their contracts with Plaintiffs and the Class members by not paying them the correct percentage of the real rate that brokers or shippers paid to Defendants.

## COUNT IV
## CONVERSION
*(By all Plaintiffs against all Defendants on behalf of the Class)*

96.    All preceding paragraphs are incorporated by reference.

97.    Plaintiffs and the Class are the rightful owners of monies that Defendants unlawfully deducted and retained as set forth in this Class Action Complaint.

98.    Defendants possess or have benefited from converting funds intended for and owned by Plaintiffs and the Class.

99.    Plaintiffs and the TILA Class have lost the use, interest, and benefit of their monies because of Defendants engaged in fraud in order to convert their monies.

**COUNT V**
**CIVIL CONSPIRACY**
*(By all Plaintiffs against all Defendants on behalf of the Class)*

100.    All preceding paragraphs are incorporated by reference.

101.    Defendants knowingly and willfully conspired and agreed among themselves to defraud Plaintiffs and Class Members of the amount of compensation promised to them by contract.

102.    In furtherance of said conspiracy and agreement, Defendants engaged in fraud, fraudulent representations, omissions and concealment of facts, acts of coverup, and consumer fraud—all calculated to defraud Plaintiffs and the Class Members of the compensation they were owed and conceal the fraud from Plaintiffs and the Class Members.

103.   All of the actions of Defendants set forth in the preceding paragraphs were in violation of the rights of Plaintiffs and Class Members and committed in furtherance of the aforementioned conspiracies and agreements.

104.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members were deprived of compensation due and owing to them. Plaintiffs and Class Members have suffered ascertainable losses of money and property and sustained monetary damages.

105.   Defendants conducted these acts with willful and conscious disregard for Plaintiffs' and Class Members' rights with the intention of defrauding them of money or otherwise causing injury, and subjected Plaintiffs and Class Members to unjust hardship so as to justify an award of exemplary and punitive damages.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests this Court to:

A.   certify the class as described herein;

B.   enter judgment (i) declaring the practices of Defendants as described herein to be unlawful and in violation of TILA and DOT regulations (49 C.F.R. § 376 *et seq.*) and (ii) permanently enjoining the continuation of said practices;

C.   enter judgment in favor of Plaintiffs and other Class Members in whatever damages they are found to be entitled in regard to the unlawful practice relating to

25

chargebacks which did not receive preapproval and/or when compensation was at a rate lower than the contractually agreed fifty percent gross, or any other practice this Court determines to be unlawful;

D.    enjoin Defendants from destroying records which demonstrate Defendants' liability or relate in any way to the class members' claims within this complaint.

E.    award reasonable attorneys' fees to the class members pursuant to 49 U.S.C. § 14704(e) and MCL 257.1336; and

F.    award such other and further relief as the Court deems proper and just.

Respectfully submitted,

By:  */s/ Jack W. Schulz*
Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 246-3590
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RAYVON SCOTT, YAZMINE WALTON,**
**JOHN WARLICK,** and **SHERROD HUTCHIN,**
individually and on behalf of all others
similarly situated,

                                    Case No.

             Plaintiffs,

vs.                                 Hon.

**FLEET QUEST LOGISTICS, LLC**
**FLEET QUEST, L.L.C., SN TRANSPORTATION**
**LLC, NERMIN MUJANOVIC, SALIH MUJANOVIC,**
**SANEL FAZLIC,** and **ARMIN HIRKICH,**
Jointly and severally,

             Defendants.
_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorney for Plaintiff*
_____/

### DEMAND FOR TRIAL BY JURY

       Pursuant to Fed. R. Civ. P. 38 and 39, and to the Eastern District LR 38.1,

Plaintiffs, individually and on behalf of all others similarly situated, demand a trial

by jury on all issues triable of right by jury.

                         Respectfully submitted,

                         By:  */s/ Jack W. Schulz* _____

27

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 246-3590
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*